**UNITED STATES of America,**
**Respondent,**

v.

**Richard LANDRUM, Petitioner.**

**Crim. No. 3:87CR00010–01.**

United States District Court,
E.D. Virginia,
Richmond Division.

Dec. 8, 1994.

G. Wingate Grant, Asst. U.S. Atty., Richmond, VA, for U.S.

Raymond A. Carpenter and Gary L. Denton, Richmond, VA, Stephen J. Cribari, Deputy Federal Public Defender, Office of the Federal Public Defender–D.M., Baltimore, MD, Counsel after Appeal, for Richard Eugene Landrum.

*MEMORANDUM*

MERHIGE, District Judge.

This matter is before the Court on Petitioner's motion to vacate, set aside or correct

his sentence pursuant to 28 U.S.C. section 2255 and Petitioner's motion for an emergency temporary injunction. The Government has responded and moves to dismiss the action. For the reasons which follow, the Court will deny the Petitioner's motions and will grant the Government's motion.

In 1987, Petitioner was convicted of making and possessing an unregistered bomb and intercepting and disclosing the contents of wire communications. Petitioner was sentenced in June, 1987. Upon the Bureau of Prison's completion of a study, ordered pursuant to 18 U.S.C. § 4205(c), Petitioner was re-sentenced in September, 1987. As part of the sentence, the Court ordered Petitioner to make the following restitution:

> The defendant shall make restitution to Linda Landrum in the sum of $1,432.00; to Jon Salotti in the sum of $432.00; to Blue Cross and Blue Shield of Virginia in the sum of $5,513.00; and to H & R Insurance Company in the sum of $1,276.64.

Judgment and Probation/Commitment Order ("J & C Order"), Crim. No. 3: 87CR00010-01 (September 17, 1987). The Court arrived upon these amounts, in part, by referencing a victim damages/injury break-down contained in the 18 U.S.C. § 4205(c) study. *See* Memorandum in Support of Motion, Exh. 2. It is unclear from the J & C Order, however, whether the Court's restitution order was based on the Victim Witness Protection Act ("VWPA"), 18 U.S.C. § 3663–64, or the former Federal Probation Act ("FPA"), 18 U.S.C. § 3651, as either statutory scheme was a permissible basis for ordering restitution at the time of Petitioner's re-sentencing.[1]

Petitioner's § 2255 motion seeks a reduction in the restitution order. Petitioner relies on *Hughey v. United States,* 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990)[2] and *United States v. Hicks,* 997 F.2d 594, 600–01 (9th Cir.1993)[3] for the proposition that VWPA section 3663(b) permits restitution for emotional injuries only when the victim has also suffered physical injuries. *See* 18 U.S.C. § 3663(b)(2)(A). According to Petitioner, and the United States does not assert otherwise, victim Linda Landrum did not suffer any physical injuries resulting from Petitioner's criminal actions. Thus, Petitioner argues that the only restitution for which he is liable is $423.00 to Jon Salotti, $1276.64 to H & R Insurance Company and $30.00 to Blue Cross and Blue Shield of Virginia. In his temporary injunction motion, Petitioner states that he has already paid $164.64 in excess of these sums and requests the cessation of further payments and a refund of the $164.64.

The United States asserts, *inter alia,* that Petitioner's claim is not cognizable in a § 2255 proceeding. In support of this position, they rely on *United States v. Rowland,* 848 F.Supp. 639 (E.D.Va.1994), in which petitioner Rowland claimed that the court failed to make sufficient factual findings in ordering restitution. The Court held that Rowland's motion was not properly raised in a § 2255 petition. In so holding, the court first noted that Rowland neglected to raise this issue at his sentencing hearing or on direct appeal. The court also emphasized that the claim itself was not cognizable in a

---

1. A precise determination of the statutory basis for its restitution order is not necessary to resolve the instant matter. As set forth above, the Petitioner's claim is not the proper subject of a § 2255 motion and will not be considered by the Court, regardless of the statutory scheme employed in ordering restitution.

2. The *Hughey* court held that under the VWPA courts have the power to order restitution only for offenses of which the defendant is convicted. 495 U.S. at 411, 110 S.Ct. at 1979.

3. *Hicks* is factually similar to the instant case. In brief, petitioner Hicks was convicted of bombing various IRS buildings. The petitioner asserted on direct appeal that the district court, in ordering restitution under the VWPA, improperly included psychological counseling expenses for

IRS employees, none of whom suffered physical injuries. The Ninth Circuit agreed. Applying *Hughey v. United States,* 495 U.S. 411, 418, 110 S.Ct. 1979, 1983, 109 L.Ed.2d 408 (1990), the court noted that a court's discretion in ordering restitution is constricted by VWPA section 3663. On this basis, the court examined the plain language VWPA § 3663(b)(2)(A) and properly held that "the cost of psychological counseling can be included in a restitution order only when the victim has suffered physical injury." *Hicks,* 997 F.2d 594 (9th Cir.1993). *Hicks,* it must be noted, differs from the instant matter in two significant respects. First, Hicks' claim was not raised on a collateral attack on his sentence. Second, retroactivity was not an issue.

§ 2255 motion because the alleged error was not a "fundamental defect which results in a complete miscarriage of justice." *Id.* at 642, 645 (*quoting Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974)).

While *Rowland* differs from the instant matter with respect to the underlying facts, the Court concludes that the general jurisdictional principles applicable in *Rowland* also apply to Petitioner's § 2255 motion. Accordingly, the Court must determine whether or not the *Hughey* and *Hicks* courts' interpretation of the VWPA renders the restitution portion of Petitioner's sentence a fundamental defect which inherently creates a "complete miscarriage of justice." *Davis,* 417 U.S. at 346, 94 S.Ct. at 2305. If this standard is not satisfied, the restitution order is not subject to collateral attack.

A decision of the Third Circuit Court of Appeals is instructive on this issue. In *United States v. Woods,* 986 F.2d 669 (3d Cir.) *cert. denied* — U.S. ——, 114 S.Ct. 90, 126 L.Ed.2d 58 (1993), the court reviewed the petitioner's allegation that a restitution order, made pursuant to the FPA and premised on counts for which he was not convicted, was invalidated by the subsequent Supreme Court decision in *Hughey.* *See supra* note 1. The government contended that *Hughey* was inapplicable because the *Hughey* court interpreted the VWPA, not the FPA. The court never reached this issue, however, because it concluded that *Hughey* could not be applied retroactively under either scenario. Consequently, the court affirmed the district court's denial of petitioner's Rule 35 motion. *See* F.R.Crim.P. 35.

The retroactivity decision in *Woods* was based on a comprehensive and detailed finding by the court that holding the *Hughey* decision non-retroactive would not result in a "serious miscarriage of justice." 986 F.2d at

671.[4] In this regard, the court was influenced by several factors including the district court's effort "to ensure the accuracy of the restitution order" and the petitioner's apparent agreement that the victims deserved compensation and that he was liable for such payments. *Id.* at 680–81. Moreover, the court noted that the imposition of restitution rather than a fine indicated that Woods did not suffer a complete miscarriage of justice as the same compensation could have been sought in a civil proceeding. As the Court noted, if Woods had been ordered to pay restitution pursuant to a civil judgment and a later court decision invalidated that judgment, Woods would not be able to attack it owing to the proscription in Federal Rule of Civil Procedure 60(b) that a civil judgment may not be reopened because of a change in the law. *Id.* at 681. Finally, the court was influenced by the fact that Woods was alleging deprivation of money, not liberty.

> If Woods were still incarcerated, and if *Hughey* called into question the validity of his imprisonment, that scenario would present us with far stronger considerations in favor of retroactive relief. When liberty is not at stake, the reasons to apply a new decision retroactively, and hence to bend the usual rules of finality, are not necessarily lacking, but are more likely to be missing.

*Id.* at 680 (*citing United States v. Keane,* 852 F.2d 199, 203 (7th Cir.1988).

■ The same factors lead this Court to conclude that a complete miscarriage of justice will not be occasioned upon Petitioner if the Court refuses to allow a collateral attack on the restitution order. To begin, Petitioner is only attacking the restitution provision of his sentence. He in no way claims that he is incarcerated in violation of federal law. Moreover, Petitioner does not deny that the

---

4. In determining this standard, the court drew upon the Supreme Court's retroactivity jurisprudence in the §§ 2254 and 2255 contexts. *See e.g., Davis,* 417 U.S. at 333, 94 S.Ct. at 2298 (establishing the appropriate retroactivity standard for § 2255 actions upon pronouncement of a new substantive criminal law decision); *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (unless one of two narrow exceptions exists, new criminal procedure rules are non-retroactive in habeas corpus actions). The court noted that the *Hughey* decision regarding restitution "lies on a continuum midway between the procedural and substantive standards"; thus, it evaluated the retroactivity issue by considering two elements common to both frameworks—the strong interest in finality and the "principle that new decisions will not be retroactively applied without substantial justification." *Woods,* 986 F.2d at 678.

victims suffered losses, nor does he disagree with the general proposition that the victims deserve to be returned to their previous positions. Finally, there is no doubt that the victims could have sought redress for their injuries in a civil action and that a judgment in their favor could not be disturbed on the basis of a subsequent change in the law.[5]

 Quite simply, a restitution order, absent substantial justification, is not the proper subject of a § 2255 petition and may not be collaterally attacked. Accordingly, the Court will deny Petitioner's § 2255 motion and his motion for an emergency temporary injunction, and will grant the Government's motion to dismiss.

5. The United States properly notes that if the Court grants Petitioner's motion, the victims would most likely be barred by the statute of limitations from seeking compensation in a civil action.