In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-1364

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CAREY L. BRESHERS, JR.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 10-CR-30212-MJR—**Michael J. Reagan**, *Judge.*

ARGUED MAY 29, 2012—DECIDED JULY 5, 2012

Before WOOD, SYKES, and TINDER, *Circuit Judges.*

WOOD, *Circuit Judge.* Following his convictions for kidnapping and interference with commerce by robbery, in violation of 18 U.S.C. §§ 1201(a)(1) and 1951, Carey Breshers received a sentence that included a restitution order of $44,618.50 pursuant to the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A. On appeal, Breshers argues that the restitution was unauthorized because his victims did not suffer physical injury.

Breshers failed to object to the order before the district court, however, and this omission leaves us with a record that was never properly developed on the question of the nature of the victims' injuries and associated expenses. Finding no plain error in the district court's order, we affirm.

**I**

On October 26, 2010, armed with a firearm, Breshers walked into World Finance, Inc., a consumer installment loan business in O'Fallon, Illinois. He instructed two World Finance employees, M.L. and T.A., to enter a back room in the building and asked them about their personal finances. The two employees told him they had no money. Breshers then asked them where the bank for World Finance is located, and they said South Carolina. He directed M.L. and T.A. to leave their cell phones, lock up the office, and get into T.A.'s Pontiac Grand Prix. T.A. was instructed to drive while he and M.L. sat in the backseat. Breshers told M.L. and T.A. that he needed money. T.A. suggested that they could get money from World Finance. He told her to drive back to the company's office and, once there, she wrote a check for $3,000 at his direction. They made two attempts to cash the check at a nearby bank, both unsuccessful.

At that point, M.L. and T.A. told Breshers that they had about $1,000 available at World Finance. Apparently willing to settle for this lower amount, Breshers ordered them to return to the office, where they gave him

$1,104. After that, Breshers instructed them to get back into T.A.'s car and directed T.A. to drive to St. Louis, Missouri (a little less than 20 miles away). During the ride, he commented that he had committed a similar offense in Oklahoma and that his hostage had been freed unharmed. He did the same with T.A. and M.L., releasing them behind an abandoned building off the highway. He was arrested on October 31, 2010, for a separate offense and later admitted to the World Finance crimes.

A grand jury returned a four-count indictment against Breshers on November 17, 2010: two counts of kidnapping, one count of interference with interstate commerce by robbery, and one count of use or carrying a firearm during a crime of violence. He entered a plea of guilty on all four counts without a plea agreement. Breshers later filed a motion to withdraw his guilty plea on Count 3 because he had not been informed that it carried a 25-year minimum sentence. He then filed an amended motion to withdraw his guilty pleas on all counts because there was significant evidentiary over-lap on the four counts. The district court dismissed Count 3, but it denied his motion with respect to the other counts.

The district court then proceeded to sentencing. T.A. provided a victim statement in which she requested the maximum sentence for Breshers. She testified that the crime had caused her marital problems, loss of employ-ment, strain on friends and family, and the destruction of her sense of security. She further testified that she

now suffers from anxiety, insomnia, panic attacks, and memory problems. She is under psychiatric care and takes antidepressant medication. Since the offense, T.A. has been on temporary disability, which pays 66% of her normal salary. She requested restitution for $105 in gas from October 29, 2010, through June 15, 2011, for transportation to and from the facility where she receives medical treatment. She estimated additional transportation costs for the following year at about $200. T.A. stated that she had lost eight months of wages and that worker's compensation pays only $1,600; she represented that she would be compensated $2,400 if she was unable to return to work in the following year.

Marilyn Messer, World Acceptance Corporation Senior Vice President of Human Resources, submitted a statement describing the impact of the offense on the business. She reported that World Acceptance, which does business as World Finance, has paid $11,947.40 for M.L. and $14,695.34 for T.A. through insurance and its worker's compensation carrier, The Hartford. It has reserved $55,654 and $65,908 for the care and support of M.L. and T.A., respectively. World Acceptance was not sure whether M.L. or T.A. would return to work. It also lost the $1,104 that was taken during the course of the robbery.

The district court sentenced Breshers to 293 months each for Counts 1 and 2, and 240 months for Count 4, running concurrently. It added three years' supervised release for each count, also to run concurrently. The district court also ordered a $300 special

assessment, no fine, and restitution of $40,289.50 to The Hartford, $1,104 to World Acceptance, and $3,225 to T.A. Breshers appeals only the restitution orders for The Hartford and T.A., arguing that neither is authorized under the MVRA because the victims did not suffer physical injury.

## II

We review the district court's order of restitution for plain error because Breshers failed to object to it in the district court. *United States v. Danser*, 270 F.3d 451, 454 (7th Cir. 2001). Under plain error review, "an appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an 'error'; (2) the error is 'clear or obvious, rather than subject to reasonable dispute'; (3) the error 'affected the appellant's substantial rights, which in the ordinary case means' it 'affected the outcome of the district court proceedings'; and (4) 'the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Marcus*, 130 S. Ct. 2159, 2164 (2010), quoting *Puckett v. United States*, 129 S. Ct. 1423, 1429 (2009). This case provides an important reminder of the valuable principle justifying this higher hurdle for the party challenging the district court's ruling. By failing to raise this issue, Breshers deprived the district court and the government of the opportunity to explore T.A.'s injuries and to develop a record on that subject. We are unable to determine from the stipulated facts whether T.A. may have

suffered some form of physical injury; if a more fully developed record showed that she had, then this appeal would probably never have reached oral argument.

## A

Bearing in mind the limited information before us, we turn to Breshers's argument. He contends that the district court plainly erred in ordering restitution for The Hartford and T.A. because, in his view, the MVRA, 18 U.S.C. § 3663A, authorizes payment based only on the victim's physical—as contrasted with mental—injuries. A plain reading of the statute does not clearly support Breshers's position. Section 3663A(b)(2) states that "in the case of an offense resulting in bodily injury to a victim" the defendant may be responsible for "the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care" and "income lost by such victim as a result of such offense." The statute does not include a definition of "bodily injury." On the one hand, it may be argued that the term "bodily injury" would be redundant if it included "physical, psychiatric, and psychological care." This argument is reinforced by Black's Law Dictionary's definition of the term: "Physical damage to a person's body." Black's Law Dictionary (9th ed. 2009). On the other hand, one might argue that "bodily injury" is an umbrella term that includes "physical, psychiatric, and psychological care." *United States v. Dotson*, 242 F.3d 391, *5 (Table) (10th Cir. 2000) (suggesting that "perhaps 'bodily injury' is a holistic

phrase referring to all aspects of the body, physical and psychological"). These alternate plausible readings of the statute reveal its ambiguity.

Further undermining Breshers's position is the fact that other federal statutes include mental injury in the definition of bodily injury. 18 U.S.C. § 1365(g)(1)(B)(3) (defining "bodily injury" as including "impairment of the function of a bodily member, organ, or mental faculty"); U.S.S.G. § 1B1.1, comment (j) (defining "serious bodily injury" as including impairment of a "function of a bodily member, organ, or mental faculty"). The Hate Crimes Act, 18 U.S.C. § 249, adopts the definition of "bodily injury" found in 18 U.S.C. § 1365(g)(1)(B)(3), but specifies that it "does not include solely emotional or psychological harm to the victim." These statutes suggest that the MVRA's use of the undefined term "bodily injury" is at best unclear on the question whether it includes mental injury.

Breshers is correct to point out that the other circuits have held that physical injuries are required before the court may order restitution for mental treatment. *United States v. Reichow*, 416 F.3d 802, 805 (8th Cir. 2005) ("[W]e hold that the MVRA requires evidence of bodily injury to victims before restitution can be ordered for their psychological treatment expenses."); *United States v. Hicks*, 997 F.2d 594, 601 (9th Cir. 1993) ("The cost of psychological counseling can be included in a restitution order only when the victim has suffered physical injury."). Neither of these cases, however, was decided on plain error review. We conclude that the district court

in the case before us did not plainly err in ordering restitution for T.A. and The Hartford.

### B

The government argues in the alternative that the MVRA authorizes reimbursement for lost income and "other expenses" under subsection (b)(4). This subsection authorizes reimbursement where the expenses are "incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4). Breshers counters that there are no facts in the record supporting the claim that the income losses and mental health treatment costs were incurred because of the victims' participation in the investigation or prosecution. Breshers's response underscores our previous comment on the reason for plain error review. We need not reach this issue because we affirm on § 3663A(b)(2) grounds.

### III

We AFFIRM the district court's restitution order awarding T.A. $3,225 and The Hartford $40,289.50.