ORDER
Michael Jackson was sentenced to 30 years in prison after a jury found him guilty of conspiracy to possess and distribute powder and crack cocaine. See 21 U.S.C. §§ 846, 841(a)(1). In this direct appeal, he argues that the district court committed plain error by counting as relevant conduct drug amounts that Jackson says were not part of his jointly undertaken criminal activity. We affirm the judgment.
In 2004 police and FBI agents in Indianapolis, Indiana, began investigating a local drug-trafficking operation. During the summer of that year and into early 2005, an undercover police officer bought approximately 510 grams of crack from Demetreous Brown in 11 separate transactions. Surveillance officers observed associates of Brown during these transactions, but no government witness was able to say that Jackson was among them. Jackson’s involvement in the conspiracy was first confirmed in February 2005 (after the 11 undercover drug purchases had been completed) when a telephone call he made to Brown was intercepted on a wiretap of Brown’s phone. Jackson was recorded asking Brown for an eighth of an ounce of cocaine to serve a customer.
After that first call to Brown, Jackson was intercepted numerous times in the next few months while calling Brown or Anthony Howard, another coconspirator whose phone also was tapped. His conversations with Brown and Howard demonstrate that Jackson performed a variety of supporting roles in the conspiracy. He personally facilitated drug deals (generally on behalf of Brown or Howard) aggregating more than 42 grams of crack, plus additional amounts of marijuana and powder cocaine. He frequently carried a gun, from a Glock handgun to a shotgun or “AK-47” assault rifle, and expressed a willingness to use these weapons if necessary to protect the coconspirators or retaliate against others. He also offered to locate a new cocaine supplier when the group was running low.
Police arrested Jackson in May 2005 on a traffic stop; they found a gun in his *576 vehicle but no drugs. Jackson was on parole at the time. After his arrest the investigators intercepted phone calls between Howard and his brother (who lived in Gary, Indiana) discussing a proposed delivery from Gary of 2 or 3 kilograms of powder cocaine planned for early June. On June 1 the brothers settled on 3' kilograms. The next day two men in separate cars arrived at Howard’s home in Indianapolis and delivered 3 kilograms of powder cocaine. After they had departed the residence, investigators stopped both men and found another 42 kilograms of powder cocaine in one of the cars. A search of Howard’s house uncovered 123 grams of crack in addition to the 3 kilograms of cocaine.
The government charged Jackson and nine others — including Brown, Howard, Howard’s brother, and the men they caught transporting the cocaine from Gary to Indianapolis — with conspiracy. The indictment alleges that the conspiracy involved at least 50 grams of crack “and/or” 5 kilograms of powder, enough to trigger a minimum prison term of ten years. See 21 U.S.C. § 841 (b)(1)(A)(ii). Jackson was tried alone and found guilty. The probation officer recommended a base offense level of 36, based on 685.65 grams of crack and 46.539 kilograms of powder cocaine— all of the drugs attributable to the conspiracy from the inception of the undercover investigation in 2004 to the final bust in June 2005. With a two-level increase for possession of a firearm and a criminal history category of VI, Jackson’s imprisonment range was 360 months to life. Despite multiple opportunities before and during the sentencing hearing, neither Jackson nor his counsel objected to the drug-quantity calculation in the presen-tence report. The court adopted the calculations in the presentence report and imposed a sentence of 360 months.
On appeal Jackson contends that the district court committed plain error by counting in his drug quantity the crack from the 11 undercover buys as well as the 42 kilograms of cocaine seized from the delivery vehicle after it had departed Howard’s residence on June 2, 2005. Jackson maintains that he cannot be held accountable for the undercover buys because there is no evidence that he had joined the conspiracy before the last of those 11 transactions, and he also contends that the 42 kilograms discovered in his coconspirator’s car cannot be attributed to him. Jackson insists — without challenge from the government — that he would have faced a guidelines imprisonment range of 262 to 327 months, not 360 months to life, if not for the purported mistake in calculating the drug quantity. The government both defends the quantity calculation and also argues that Jackson waived this challenge by endorsing the presentence report.
Jackson concedes that he forfeited, but disputes that he waived, his objection to the quantity finding. A waived objection is unreviewable on appeal, but a forfeited contention is reviewed for plain error. United States v. Adigun, 703 F.3d 1014, 1021 (7th Cir.2012). The government notes that Jackson said “no” when the district judge addressed him personally and asked if he “had any reason to dispute” the probation officer’s calculation of the offense level, that his lawyer acknowledged while advocating a much lower sentence that “a black and white analysis” did yield a range of 360 months to life, and that Jackson “did not dispute” the quantity finding during allocution. But waiver must be knowing and intentional, not accidental or negligent, see id.; United States v. Jaimes-Jaimes, 406 F.3d 845, 848 (7th Cir.2005), and the government has not articulated a strategic reason why Jackson would forgo an objection that, if correct, would have reduced the low end of his *577 imprisonment range by eight years. We construe the circumstances here as a forfeiture, not a waiver, and we have discretion to vacate Jackson’s sentence if we find an obvious error that affects his substantial rights and also seriously impugns the fairness, integrity, or public reputation of judicial proceedings. See United, States v. Marcus, 560 U.S. 258,130 S.Ct. 2159, 2164, 176 L.Ed.2d 1012 (2010).
At issue here are two defining principles of “relevant conduct,” both recognizing that criminal responsibility for purposes of the sentencing guidelines often is narrower than liability under Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). The first principle is that a defendant is not responsible for the criminal activity that others committed before he joined their endeavor, even if he knows about that activity. U.S.S.G. § 1B1.3 cmt. n. 2; United States v. Spano, 476 F.3d 476, 480 (7th Cir.2007); United States v. Diamond, 378 F.3d 720, 726-27 (7th Cir.2004). The second principle is that the scope of the defendant’s jointly undertaken activity matters to the guidelines even if it does not under Pinkerton. Conspiracy liability as defined in Pinkerton is “generally much broader” in scope than relevant conduct under the sentencing guidelines, see United States v. Fox, 548 F.3d 523, 531-32 (7th Cir.2008); United States v. Soto-Piedra, 525 F.3d 527, 531-32 (7th Cir.2008), because the latter will encompass the criminal conduct of co-conspirators only to the extent that conduct was both (1) reasonably foreseeable to the defendant and (2) in furtherance of the criminal activity that the defendant agreed to jointly undertake. See U.S.S.G. § lB1.3(a)(l)(B) & cmt. n. 2; United States v. Salem, 597 F.3d 877, 884-85 (7th Cir.2010); United States v. Dean, 574 F.3d 836, 844^45 (7th Cir.2009); Soto-Piedra, 525 F.3d at 531-33. Relying on these principles, Jackson maintains that the district court mistakenly attributed to him all of the drugs associated with his coconspir-ators.
The difficulty for Jackson’s argument is the plain-error standard of review. Here the district court did not make an express finding regarding the scope of Jackson’s jointly undertaken activity, but on plain-error review we will uphold the court’s decision if it is clear that the court adopted the facts in the presentence report and the government’s reasoning concerning those facts. See Salem, 597 F.3d at 888; United States v. Panaigua-Verdugo, 537 F.3d 722, 726 (7th Cir.2008); United States v. Arroyo, 406 F.3d 881, 889 (7th Cir.2005). We defer to the reasonable inferences that can be drawn from the record, see Salem, 597 F.3d at 889, and the facts support a reasonable inference that Jackson was involved in the conspiracy before he was caught on wiretap in February 2005 and that the 42 kilograms found during the June 2005 seizure were within the scope of Jackson’s jointly undertaken activity.
Jackson had considerable involvement in the conspiracy’s activities, as the wiretaps revealed, and he admitted that his criminal history began in 2003 when he moved from Gary to Indianapolis, where he met the other members of the conspiracy. The presentence report shows that Jackson incurred four convictions for crimes committed in Indianapolis before his 2005 arrest, although none for drug offenses. Perhaps additional facts could have shed greater light on the scope of Jackson’s jointly undertaken activity within this conspiracy, but his failure to challenge the drug quantity at sentencing signaled satisfaction with the presentence report and led the government and the district court to conclude that prolonging the sentencing hearing to introduce additional evidence was unnecessary. The plain-error standard rightly makes it very difficult for a defendant to *578 succeed on appeal when he did not make a contemporaneous objection, which would have allowed the district court to address his concerns for the first time. See United States v. Breshers, 684 F.3d 699, 702 (7th Cir.2012); United States v. Arenal, 500 F.Sd 634, 639 (7th Cir.2007); United States v. Piélago, 135 F.3d 703, 709 (11th Cir. 1998). On this record we conclude that the district court did not commit plain error in calculating Jackson’s sentence.
AFFIRMED.