**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 4 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LAUREEN JOY MCGOWAN,

Defendant - Appellant.

No. 00-6044

(W.D. Oklahoma)

(D.C. Nos. CR-99-94-M,
CR-99-153-M)

**ORDER AND JUDGMENT** *

Before **HENRY** , **BALDOCK** , and **LUCERO** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to honor the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f). The case is therefore submitted without

oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I. BACKGROUND

In 1999, Laureen Joy McGowan entered pleas of guilty to various counts in two indictments charging her with possession of stolen mail containing personal checks, in violation of 18 U.S.C. § 1708 and 18 U.S.C. § 2. Ms. McGowan had participated in thefts of mail from numerous Tulsa and Oklahoma City mail delivery boxes. In the course of these thefts, Ms. McGowan and others stole the entire contents of mailboxes, apparently in order to find packages of blank checks, which were then passed using counterfeit identification cards. In January 2000, the district court sentenced Ms. McGowan to 51 months' imprisonment, which represented an upward departure from the guideline range, and a sentence outside the "heartland" of mail fraud cases. Ms. McGowan now appeals that sentencing departure, arguing that it was both improper and excessive. For the reasons set forth below, we affirm the judgment of the district court.

## II. DISCUSSION

We have held that

[t]he Sentencing Guidelines provide that each guideline carves out a "heartland," "a set of typical cases embodying the conduct that each guideline describes." U.S.S.G. ch. 1, pt. A, subpt. 4(b). The Guidelines explain that "[w]hen a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." Id. As a result, a sentencing court may depart from the Guidelines and impose a sentence outside the guideline range

where it "finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.'" Id. § 5K2.0 (quoting 18 U.S.C. § 3553(b)).

United States v. Sicken, 223 F.3d 1169, 1172 (10th Cir. 2000).

We review sentencing departures under an abuse of discretion standard which "'includes review to determine that the discretion [of the district court] was not guided by erroneous legal conclusions.'" United States v. Collins, 122 F.3d 1297, 1302 (10th Cir. 1997) (quoting Koon v. United States, 518 U.S. 81, 100 (1996)). More specifically, we must determine: (1) whether the factual circumstances supporting a departure are permissible departure factors; (2) whether the departure factors relied upon are sufficient to remove the defendant from the applicable Guideline heartland thus warranting a departure; (3) whether the record sufficiently supports the factual basis underlying the departure; and (4) whether the degree of departure is reasonable. See United States v. Gauvin, 173 F.3d 798, 806-07 (10th Cir. 1999).

## A. The Factors Justifying Departure

With regard to the first three characteristics cited by Gauvin, Ms. McGowan contends that the factors relied upon for departure were insufficient to remove her case "from the heartland of mail theft cases under [USSG] § 2B1.1." Aplt's Br. at 15. The factors cited by the district court were (1) the number of

victims; (2) the number of checks; (3) the possession of false identification cards and the equipment to make them; (4) the theft of personal items having no monetary value; and (5) the harms suffered by victims who were forced to correct their credit and financial records. 3d Amended Judgment, filed Feb. 10, 2000 [hereinafter referred to as "Judgment"], at 13.

Ms. McGowan states that the number of victims did not require an additional enhancement because it was been "implicitly considered" through a 9-level enhancement for the loss amount under USSG §2B1.1(b)(1), and a two-level enhancement for more than minimal planning under §2B1.1(b)(4)(a). Aplt's Br. at 16. In support, she cites United States v. Corrigan, 128 F.3d 330, 335 (6th Cir. 1997), which held that "[t]he number of victims is adequately considered in the Sentencing Guidelines dealing with fraud," and United States v. Stein, 127 F.3d 777, 780 (9th Cir. 1997), which held that "it is the rare case that the existence of both" multiple victims and more than minimal planning "will take the case outside the heartland of the Guidelines and justify a departure." The government does not directly respond to this argument. Instead, it cites Koon, 518 U.S. at 98, for the proposition that the district court's departure methodology was permissible. See Aple's Br. at 3-4.

We find the cases cited by Ms. McGowan inapposite. Both cases deal with fraud offenses under §2F1.1, not property offenses under §2B1.1. The Guidelines

-4-

for property offenses contain no provision akin to the multiple victim enhancement of §2F1.1(b)(2)(B). Furthermore, §2F1.1(b)(2)(B) lists more than minimal planning and multiple victims as alternative, not cumulative, reasons to apply a two-level enhancement. See USSG §2F1.1(b)(2)(B) ("If the offense involved (A) more than minimal planning, or (B) a scheme to defraud more than one victim, increase by 2 levels.") (emphasis added). As the Ninth Circuit pointed out in Stein, this suggests the Sentencing Commission realized that in most fraud schemes, "where one of these factors applies the other will apply as well." Stein, 127 F.3d at 780. We take the absence of a similar alternative provision for multiple victims in §2B1.1(b)(4)(A) as an indication that the Commission did not take the same view of multiple victim property offenses, and that a large number of victims may constitute an adequate justification for an additional departure. Here, the number of victims was around 300, which seemed to the district court "substantially in excess" of a number typical for property offenses, even those involving mail. Aplt's Br. at 65 (Tr. of Sentencing Hearing). It was thus a permissible basis for a departure.

Ms. McGowan then proposes that the number of checks, the possession of equipment to make false IDs, and the theft of items having no monetary value all fell within the heartland of mail theft cases. She argues that because §2B1.1(b)(3) requires a minimum enhancement to level 6 for the theft of

-5-

"undelivered United States mail," the Commission "has considered and addressed the enhancements appropriate for theft of mail cases," and "mail cases have their own 'heartland' of conduct." Aplt's Br. at 17-18. Again, the government does not specifically respond to these arguments, but generally contends that the guidelines "do not adequately consider the harm to the individual victims." Aple's Br. at 4.

Based on the Application Notes to §2B1.1, we agree with the government's position. The Commission noted that

> [c]onsistent with statutory distinctions, an increased minimum offense level is provided for the theft of undelivered mail. Theft of undelivered mail interferes with a governmental function, and the scope of the theft may be difficult to ascertain.

USSG §2B1.1, comment. (backg'd.). It appears that the intent of this enhancement was not to take into account the theft of over 300 boxes of checks, the possession of false identification, and the theft of items with no monetary value. The presence of these factors may therefore appropriately take a mail theft case outside the sentencing heartland.

Finally, Ms. McGowan contends that the court's use of the "extensive inconveniences and costs incurred, not only by financial institutions, but by the individuals whose checks were stolen," was unjustified. See Judgment at 13. She proposes that like the use of false identification, the need for individuals to correct their credit histories is a normal result of mail theft and does not take a

-6-

case outside the mail theft "heartland."     See Aplt's Br. at 19-23.  We decline to reach the merits of this argument, as we find that the district court's departure was already justified by the factors cited above.

## B.  The Degree Of Departure

The fourth question from     Gauvin  asks whether the degree of departure was reasonable.  Ms. McGowan argues that in this case it was not.  According to the judgment, the district court apparently intended to depart upwards by two levels.  However, upon discovering that this would vault Ms. McGowan into a new criminal history category, in which an additional one-level reduction would be granted for her acceptance of responsibility, the district court decided to add a third level to the upward departure.  That additional level resulted in a net upward departure of two levels, giving Ms. McGowan an offense level of 15 and a criminal history category of VI.     See Judgment at 13-14.  Ms. McGowan argues that while the two-level departure "would have been a guided departure," the addition of the third level resulted in "an unguided departure contrary to the structure of the guidelines."  Aplt's Br. at 24.

Our review of a departure decision's reasonableness is deferential.     See United States v. Whiteskunk   , 162 F.3d 1244, 1253 (10th Cir. 1998).  In     United States v. Bartsma   , 198 F.3d 1191 (10th Cir. 1999), this court held that when a

district court departs from the Guidelines, it must "specifically articulate reasons for the degree of departure," using any "reasonable methodology hitched to the Sentencing Guidelines," including "extrapolation from or analogy to the Guidelines." Id. at 1196 (quoting United States v. Collins, 122 F.3d 1297 (10th Cir. 1997)). On review, we examine the district court's stated reasons, along with factors such as "the seriousness of the offense, the need for just punishment, deterrence, protection of the public, correctional treatment, the sentencing pattern of the Guidelines, the policy statements contained in the Guidelines, and the need to avoid unwarranted sentencing disparities." Collins, 122 F.3d at 1308-09. While we have stated that the district court is not required to justify the degree of departure with mathematical precision, it is required to include in its justification "some method of analogy, extrapolation or reference to the sentencing guidelines." Bartsma, 198 F.3d at 1197 (quoting United States v. O'Dell, 965 F.2d 937, 939 (10th Cir. 1992)).

In selecting its level of departure, the district court stated that

[u]pon review of the Sentencing Guidelines, the Court finds §3A1.1, hate crime motivation or vulnerable victim, is an appropriate section to look to for guidance in determining the level of departure. The Court notes, however, there are no "vulnerable victims" in this case.
Thus, after looking at §3A1.1 for guidance *and in light of the unusual circumstances in this case*, and due to the impact of an upward departure on the amount of adjustment for acceptance of responsibility, the Court finds it is appropriate to depart upward by three levels, resulting in an offense level of 15 and a criminal history category of VI.

Judgment at 13-14 (emphasis added).

USSG §3A1.1(b)(1) permits a two level upward departure for an offense committed against a vulnerable victim. USSG §3A1.1(b)(2) also permits a cumulative enhancement of another two levels if there were a large number of vulnerable victims. Taken together, these provisions would seem to permit as much as a four level enhancement if used as an analogy. As the district court could have enhanced Ms. McGowan's sentence as much as four levels under the provision it chose, it was not an abuse of discretion for it to choose a three level departure.

## III. CONCLUSION

For the reasons set forth above, we AFFIRM Ms. McGowan's sentence.

Entered for the Court,


Robert H. Henry
Circuit Judge