**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

SEP 30 2013

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | No. 12-10479 |
| Plaintiff - Appellee, | D.C. No. 2:09-cr-00147-JCM-GWF-1 |
| v. | |
| RUSSELL PIKE, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted September 12, 2013
San Francisco, California

Before: SCHROEDER and BYBEE, Circuit Judges, and BEISTLINE, Chief District Judge.[**]

Following a six-day bench trial, Russell Pike was convicted of one count of tax evasion in violation of 26 U.S.C. § 7201 and sentenced to 52 months' imprisonment. Pike appeals his conviction and sentence. We affirm.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The Honorable Ralph R. Beistline, Chief District Judge for the U.S. District Court for the District of Alaska, sitting by designation.

I

The elements of tax evasion are "will-fulness; the existence of a tax deficiency; and an affirmative act constituting an evasion or attempted evasion of the tax." *Sansone v. United States*, 380 U.S. 343, 351 (1965) (internal citations omitted). Pike contends that he did not commit an affirmative act of tax evasion under *Sansone* because forward dating a stock purchase agreement "does not have the requisite effect of reducing the stated tax liability." *Id.* at 352. Pike correctly points out that his tax liability is based on the date he received payment for his shares, not the date specified in the agreement. But he misreads *Sansone* as suggesting that forward dating an agreement is not an affirmative act of evasion. The portion of *Sansone* that Pike relies on merely establishes that § 7201 requires a tax deficiency in addition to an affirmative act. Following the phrase quoted by Pike, the Court offers a hypothetical scenario "where a taxpayer understates his gross receipts and he offsets this by also understating his deductible expenses." *Id.* The Court concludes that "in such a case . . . [he] would not have violated § 7201 as *there would not have been the requisite § 7201 element of a tax deficiency*." *Id.* at 353 (emphasis added).

The Court established in *United States v. Spies*, 317 U.S. 492 (1943), that an "affirmative willful attempt may be inferred from . . . any conduct, the likely effect

2

of which would be to mislead or to conceal." *Id.* at 499.  Forward dating a stock purchase agreement would not change Pike's tax liability, but it would potentially conceal the liability by making it appear as if he received cash for his shares in 2007 rather than 2006.  *See id.* ("[A]ffirmative willful attempt may be inferred from conduct such as . . . making false entries of alterations . . . [or] concealment of assets or covering up sources of income.").  We have upheld convictions under § 7201 where the defendant attempted to conceal his tax liability even though the act of concealment did not alter the underlying liability.  *See, e.g.*, *United States v. Mal*, 942 F.2d 682, 684 (9th Cir. 1991); *United States v. Voorhies*, 658 F.2d 710, 712–13 (9th Cir. 1981).  The district court's finding that Pike attempted to forward date a stock purchase agreement is sufficient to support the conclusion that Pike committed an affirmative act of evasion.

## II

Pike also argues that the lawyers who represented him at trial were constitutionally ineffective.  He first asserts that his counsel failed to elicit testimony from tax attorney Peter Rinato that he allegedly advised Pike not to file a tax return in October 2007.  But Pike's attorney Kevin Leik asked Rinato whether he "g[a]ve any more information to Russell regarding his taxes" after April 2007 and Rinato answered "No."  Furthermore, Pike was not prejudiced by his lawyer's

3

unwillingness to press Rinato on the issue. While Pike's failure to file a tax return is evidence of willfulness under § 7201, the district court separately concluded that Pike acted wilfully by attempting to forward date a stock purchase agreement for tax reasons and informing others that he knew that he owed taxes on the transaction. The evidence supports the district court's conclusion that Pike acted willfully even if Rinato told him not to file a tax return before October 15, 2007.

Next, Pike alleges that his lawyers neglected to impeach the credibility of government witnesses Karim Mastakiya and Kirk Sanford. But Pike's lawyer Leik tried to cross-examine them about their own alleged involvement in fraud and tax evasion. The court sustained an objection to the introduction of the testimony over Leik's protest. Additionally, any error attributable to Leik did not prejudice Pike because government witness Bill Underhill offered cumulative testimony about Pike's efforts to evade his tax obligations, and his credibility was not in doubt.

Pike also contends that his lawyers erred by not calling Carol Evelyn Brown as a defense witness. Regardless of their reasons for not doing so, the decision did not prejudice Pike. Pike claims that Brown would have testified that he did not sell his personal stock, but rather he engaged in nominee transactions whereby he acted as an intermediary through whom Xyience stock was sold to new investors. But this theory was developed by Pike at trial and rejected by the district court in light

4

of the overwhelming evidence that he was selling his own shares. On direct examination by the government, Brown testified that she issued stock certificate number 11, among others, to Pike and then transferred some of the shares represented by that certificate to other investors at Pike's request. Any testimony Brown offered to the effect that Pike was not selling his own personal shares would therefore have flatly contradicted her own prior testimony, which was supported by ample documentary evidence.

Finally, Pike alleges a host of other shortcomings by trial counsel, including unfamiliarity with federal practice and deficient preparation. But Pike does not indicate how he was prejudiced by these additional instances of alleged ineffectiveness. His counsel's various shortcomings did not meaningfully affect the outcome of Pike's trial. Furthermore, the district court did not abuse its discretion by refusing to hold an evidentiary hearing or reopen the record to address Pike's ineffective assistance claims. Pike submitted numerous post-trial declarations, and his new lawyers ably argued them before the court denied Pike's motion for a new trial. *See United States v. Alexander*, 695 F.2d 398, 402 (9th Cir. 1982) ("The decision to hold a hearing or to proceed by affidavit as done here is within the sound discretion of the trial court. . . . We see no abuse of discretion in

the failure to hold a full hearing when the affidavits themselves established the evidence was insufficient to support the motion.").

## III

Pike's various contentions that the district court erred in sentencing him to 52 months' imprisonment also lack merit. We assume *arguendo* that the district court needed to find by clear and convincing evidence that the tax loss suffered by the government exceeded $1 million to support Pike's sentence. The government introduced evidence that, under the most conservative assumptions, Pike owed more than $1.1 million in tax on his stock sales during 2006. Overwhelming evidence indicates that Pike sold his own personal shares: his name appeared as the seller on multiple stock purchase agreements, the money was wired to his individual bank account, and he treated all of the proceeds that he transferred to Xyience as retiring his debt to the company and creating a loan payable to himself on his subsequent tax returns and his personal bankruptcy filing. But even if Pike sold Xyience stock as a nominee and wrongly retained the proceeds, he still owed tax on these ill-gotten gains. *See James v. United States*, 366 U.S. 213, 219 (1961); *United States v. George*, 420 F.3d 991, 998 (9th Cir. 2005).

The district court did not abuse its discretion by refusing to hold an evidentiary hearing on the tax loss calculation. Pike's new counsel presented

6

affidavits in support of his position and argued them before the court at sentencing. *See United States v. Stein*, 127 F.3d 777, 780–81 (9th Cir. 1997) ("Where the district court allows the defendant to 'rebut the recommendations and allegations of the presentence report either orally or through the submission of written affidavits or briefs,' Rule 32 does not require an evidentiary hearing.") (citation omitted). Finally, the district court fully discharged its duty under Rule 32(i)(3)(B) to rule on all disputed portions of the presentence report. The court addressed and rejected Pike's contention that he sold Xyience treasury stock rather than his personal stock at every stage of the trial, including sentencing. To the extent that the district court failed to answer Pike's minor objections—such as whether he or his brother purchased an expensive car—there is no need to remand for the district court to make findings on irrelevant facts that do not affect the length of Pike's sentence. *See United States v. Saeteurn*, 504 F.3d 1175, 1181 ("[A]lthough the district court did not resolve [defendant's] objection to his citizenship status as listed on the PSR, the district court's failure to do so did not violate Rule 32(i)(3)(B), which is limited to factual disputes which affect the temporal term of the sentence the district court imposes.").

The judgment of the district court is **AFFIRMED**.